# United States District Court
## Southern District of New York

X------------------------------------------------------------------X     Civil Action No. 1:19-cv-11870

COMMUNITY PAWN HOLDING LLC d/b/a
PAWN RITE and BELKIS RODRIGUEZ

Plaintiffs,

-against-                                    **2nd AMENDED COMPLAINT**

CITY OF NEW YORK, NYPD, NYPD OFFICER
MARIO NATALE a/k/a MARCO ARTALE, NYPD
OFFICER JONATHAN TAVERAS (#30195),
NYPD OFFICER JONES, NYPD OFFICER
JENKINS (#945853) and JOHN DOE OFFICERS
#1-10

Defendants.
X------------------------------------------------------------X

Plaintiffs COMMUNITY PAWN HOLDING LLC d/b/a PAWN RITE and BELKIS

RODRIGUEZ  by and through their attorney, PAUL J. SOLDA, ESQ., an attorney duly admitted

to practice in the State of New York and before the S.D.N.Y. -  alleges the following:

1.  This is an action by United States citizens and a domestic business limited liability

company, brought to remedy deprivation of their civil rights and equal protection by person(s)

acting under color of state law in violation of 42 U.S.C. Section 1983 et. seq. - seeking compensatory

and punitive damages, attorneys fees and other appropriate legal and equitable relief.

JURISDICTION

2.   Jurisdiction of the Court is proper pursuant to 28 U.S.C. §§1331, 1343 and 42 U.S.C.

§1983 et. seq.  In accordance with 28 USC §1367, supplemental and pendent jurisdiction also exist

as there are related and  intertwined state claims at  issue which form a part of the same controversy.

3.  The action arises with questions under the Constitution of the United States, and challenge pursuant to 42 U.S.C. §1983.  Jurisdiction is accordingly founded on the existence of a federal question.

4.  As the unlawful practices complained of herein occurred within the City of New York, venue is accordingly proper.

5.  Pursuant to N.Y.S. General Muncipal Law §50(e), a Notice of  Claim was served upon the appropriate parties for the City of New York on December 31, 2018 and the Office of the Comptroller assigned claim number 2019PI000912 thereto.

PARTIES

6.  COMMUNITY PAWN HOLDING LLC d/b/a PAWN RITE (" PAWN RITE"),  is a New York limited liability company which operates as a licensed collateral loan broker and secondhand dealer - with principal offices located at 1256 Broadway, Brooklyn, New York.  PAWN RITE operates a total of eight branch offices located throughout the County of Kings.

7.  Plaintiff BELKIS RODRIGUEZ ("RODRIGUEZ")  is a New York resident and a citizen of the United States, residing at 766 Shepherd Avenue, Brooklyn, NY.   RODRIGUEZ serves as a senior manager to PAWN RITE - at one of their branches located at 8215 Flatlands Avenue, Brooklyn, NY.

8. Upon information and belief, and at all times hereinafter mentioned, Defendant CITY OF NEW YORK ("NYC") was and still is a government and municipal entity existing within the boundaries of the five boroughs of the City of New York,  State of New York.

9.  Upon information and belief, and at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE DEPARTMENT ("NYPD") is a law enforcement entity promulgated

and existing pursuant to New York City Charter - having its principal place of business in the City of New York,  State of New York.

10.  Upon information and belief, and at all times hereinafter mentioned, Defendant NYPD OFFICER MARIO NATALE ("Undercover" #3234), is a duly employed police officer of the NYPD - assigned to NYPD Precinct #69 in or about 2018.

11.  Upon information and belief, and at all times hereinafter mentioned, Defendant NYPD OFFICER JONATHAN TAVERAS (#30195) is a duly employed police officer of the NYPD - assigned to NYPD Precinct #69 in or about 2018.

12.  Upon information and belief, and at all times hereinafter mentioned, Defendant NYPD OFFICER JONES is a duly employed police officer of the NYPD - assigned to NYPD Precinct #69 in or about 2018.

13.  Upon information and belief, and at all times hereinafter mentioned, Defendant NYPD OFFICER JENKINS (#945853) is a duly employed police officer of the NYPD - assigned to NYPD Precinct #69 in or about 2018.

## PAWNBROKER BACKGROUND

14.  New York City pawnbrokers operate under a statutory framework composed of rules and guidelines emanating from both state and local city law[1].  This framework notably compels these businesses to maintain detailed records of their transactions and make same available for lawful *administrative inspections* by law enforcement.

---

[1] See eg.:  NYS General Business Law, Article 5, NYC Administrative Code, Title 20, Subchapter 12; NYC Charter, Ch.18,§436. See also: Rules of City of New York, Dept Consumer Affairs (6 RCNY) § 1-16 and Police Department (38 RCNY) §§ 21-03(a) and (b), 21-04(a) and (c), 21-07(a)-(f), and 21-08.

15.  It is a point of contention that the statutory framework has been subverted to enable law enforcement to freely undertake warrant-less searches and seizures of pawnbrokers and to use the inspection right pre-textually to justify visits which in reality are undertaken for illegitimate purposes - such as random criminal investigations.

16.  Further, it is a widespread practice that while using the electronic reporting system known as Leads Online[2] - the NYPD routinely data mine and investigate customers and their pledged merchandise.  In turn, they investigate the pawnbroker and demand seizure of such merchandise and/or issue "police hold orders" - simply because a customer may be a known recidivist, probationer or suspect for some crime.

17.  With such police demands comes the threat that if the pawnbroker fails to comply (and refuses to "voluntarily" produce the targeted collateral merchandise) - the business will face the heavy hand of the law.

18.  Significantly, police are only permitted to conduct *administrative inspections* (of such a businesses' records) - provided that it's  part of a defined systematic regulatory scheme and are of a properly defined scope - as that limited right was set forth in a certain New York Court of Appeals ruling entitled <u>People vs. Scott/People vs. Keta,  Et. Al.</u>  (79 N.Y. 2d 474, 1992)[3].  Moreover, the entire regulatory scheme and statutory framework has recently been found  unconstitutional by a New York State Supreme Court case entitled <u>CLANY vs. City of New York, Et. Al.</u>, Order dated

---

[2] Leads Online was authorized pursuant to NYC Local Law 149 (2014) and certain relevant portions of the NYC Administrative Code were amended to incorporate electronic filing.

[3] See also:  <u>Gem Financial Services v. City of New York</u>, 298 F.Supp. 3d 464 (2018) – where NYC Charter §436 was ruled unconstitutional and where commonly issued NYPD "hold orders" were deemed impermissible Fourth Amendment seizures; see also, <u>New York v. Burger</u>, 482 U.S. 691 (1987).

April 3, 2019 (Sup. Ct., Bronx County #303901/2014)[4].

## FACTS OF THE CASE

19.  PAWN RITE and its predecessor entity have operated as a pawnbroker chain in NYC since 1999.  By year 2018, PAWN RITE grew to operate eight separate branch offices - all within the County of Kings, City of New York.   Each branch office individually holds a collateral loan broker (pawnbroker) and a second hand dealer license, duly issued by the N.Y.C. Department of Consumer Affairs.

20.  PAWN RITE has always been committed to operate in accordance with the bespoken rules and regulations by maintaining conforming records (in both paper and computer form) - of all their pawnbroker/secondhand dealer[5] transactions.   As such, they are preserved for business compliance and are available for appropriate inspection by law enforcement.

21.  Throughout the year 2017 and 2018, the NYPD began a concerted effort to enforce their will upon PAWN RITE - often by randomly investigating crime leads and forcing the business under threat of  heavy-handed tactics - to comply with their demands.

22.  It is well known throughout the industry that the NYPD had been promoting a policy which coerced pawnbrokers to submit to warrantless intrusions for purposes of undertaking criminal investigations - under the guise of conducting an administrative inspection scheme.

23. Significantly, warrants were never obtained nor executed upon PAWN RITE - especially during this period of time.

---

[4] At the time of original Complaint filing, the New York State First Appellate Division upheld the ruling that NYC Charter §436 is facially unconstitutional (the court, however, reversed regarding NYS GBL and NYC Admin. Code, et. ano.).

[5] For economy, "secondhand dealers" will not be mentioned forthwith as they are deemed in like kind to pawnbrokers.

24.   With electronic reporting (through Leads Online), use of PAWN RITE's transactional information is at their disposal - positioning the NYPD to pursue warrantless criminal investigations and enabling them to order "holds" on whatever chosen assets and collateral security may be held by the business. Further, the NYPD made demands to physically seize certain collateral merchandise and did so under (similar) threats of heavy-handed police activity.

25.   By way of example(s), but not inclusive of all such actionable events, the NYPD engaged in the following particular acts:

a.  On July 11, 2017, at PAWN RITE's Flatlands branch, NYPD officer "Johnson" sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

b.  On July 24, 2017, at PAWN RITE's Flatlands branch, NYPD officer "Johnson" sought to view and seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

c.  On July 31, 2017, at PAWN RITE's Flatlands branch, NYPD officer "Johnson" sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

d.  On November 8, 2017, at PAWN RITE's Remsen branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

e.  On December 3, 2017, at PAWN RITE's Flatlands branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

f.  On December 20, 2017, at PAWN RITE's Broadway branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

g.  On January 9, 2018,  at PAWN RITE's Remsen branch, an (unknown) NYPD

officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

   h.  On January 11, 2018, at PAWN RITE's Broadway branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

   i. On January 16, 2018,  at PAWN RITE's Broadway branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

   j. On January 26, 2018,  at PAWN RITE's Broadway branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

   k.  On February 5, 2018,  at PAWN RITE's Broadway branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

   l.  On July 23, 2018,  at PAWN RITE's Remsen branch, an (unknown) NYPD officer sought to seize certain merchandise and despite protest by Plaintiff, ordered a "criminal hold".

26.   On each and every instance so alleged, the NYPD threatened PAWN RITE with reprisal(s) - if they did not cede to their warrantless demands.

27.   PAWN RITE, however, objected to these police intrusions and demands to hold or confiscate collateral/merchandise of the business.

28.   Without surprise, whenever PAWN RITE resisted these intrusions, the NYPD responded with threats of follow-up visits to their various branches while demanding "compliance" with their "inspection program".  During these visits, the NYPD issued warnings which included maintaining a heavy police presence at their branches, arrests, store closure and issuance of criminal/administrative code violations.

29.  Significantly, many of these NYPD activities were flagrantly conducted without care for privacy and within the presence of customers and the public in general.

30.  Notwithstanding, PAWN RITE continued to request that the NYPD conduct themselves legally and that they obtain warrants whenever appropriate.

31.  As will be further demonstrated below, virtually all the NYPD threats and actions had no merit whatsoever and accordingly violated PAWN RITE's constitutional rights.

32.  By way of further example following the affirmation and intrusions - on April 3, 2018, NYPD officers conducted an "undercover sting operation" at 8215 Flatlands Avenue, Brooklyn (the "Flatlands branch").  Undercover police officer Defendant MARIO NATALE ("NATALE")[6] entered the PAWN RITE Flatlands branch and posing as a customer - approached Plaintiff RODRIGUEZ to undertake a transaction.

33.  After negotiating terms with RODRIGUEZ, Defendant NATALE consummated a legitimate transaction with PAWN RITE - having sold a certain electronic device, signing a contract while collecting the agreed compensation (from RODRIGUEZ).

34.  Defendant NATALE notably provided proper identification and affirmed that he had the right to sell the bespoken merchandise.

35.  Nonetheless, RODRIGUEZ, was subsequently arrested without any justification or probable cause.

36.  The arrest was undertaken by Defendant JONATHAN TAVERAS ("TAVERAS") - and was apparently engineered by the command of NYPD Precinct 69 - one particular precinct which had previously been intruding on PAWN RITE and threatening reprisal for their failure to "comply".

37.  That NATALE/TAVERAS  falsely claimed through the attendant criminal accusatory instrument - that the merchandise they sold to RODRIGUEZ/PAWN RITE - had been openly discussed as being "stolen".

---

[6] Pursuant to Stipulation (ecf #36) Plaintiff revised the caption regarding Defendant MARIO NATALE (a/k/a MARCO ARTALE).

38.  That as a consequence of the RODRIGUEZ arrest, the NYPD forced closure of the operation of PAWN RITE's Flatlands branch for the remainder of that day.

39.  It later became apparent that Precinct 69 had initiated a widespread "shakedown" on PAWN RITE - as a result of their prior "defiance" - which was simply the result of management challenging the NYPD on whether it's efforts were legal/constitutional - and whether their actions required warrants.

40.  Notwithstanding, RODRIGUEZ was incarcerated and charged with possession of stolen property and was compelled to appear on numerous occasions before the Kings County Criminal Court.

41.  That on the scheduled trial date, (October 16, 2018), the subject NYPD officers failed to appear and as a result - RODRIGUEZ's criminal charges were dismissed.

42.  Back on May 24, 2018 (after the RODRIGUEZ arrest), RODRIGUEZ was again detained and issued summonses (by Defendants NYPD OFFICER JONES/NYPD OFFICER JENKINS) - alleging faulty record-keeping (ADC 20 - 273) which in turn compelled an appearance before the Manhattan County Court (Oath).

43.  Before issuing said summons to RODRIGUEZ, the NYPD officers again made demands to search PAWN RITE - despite management asking for warrants.

44.  On October 7, 2018, said  Court dismissed the referenced summonses on the merits (#444-366-3762/776 NYC-Kings).

45.  That on July 20, 2018, at the PAWN RITE Flatlands Avenue branch, RODRIGUEZ was again detained and issued summonses alleging faulty record-keeping, etc. (RCNY 21-11 A3/21-11 A1) - which in turn compelled an appearance on October 4, 2018, before the Manhattan County Court (Oath).

46.  The summonses were similarly issued following PAWN RITE's refusal to cede to the NYPD's warrantless demands.

47.  That after several court appearances, on November 7, 2018, the Court dismissed the

referenced summonses on the merits (#199900517/526 Kings).

48.  That on August 8, 2018, at the PAWN RITE Flatlands Avenue branch, RODRIGUEZ was again detained and issued a summons alleging faulty record-keeping (ADC 20 - 463) - which in turn compelled an appearance on September 25, 2018, before the Kings County Court (Oath).

49.  The summonses were similarly issued following PAWN RITE's refusal to cede to the NYPD's warrantless demands.

50.  On October 25, 2018, the Court dismissed the referenced summons on the merits (#200221048 Kings).

51.  That on September 13, 2018, at the PAWN RITE Flatlands Avenue branch, RODRIGUEZ was again detained and issued summonses alleging faulty record-keeping (ADC 20 - 273/20-277) compelling an appearance on October 30, 2018, before the Kings County Court (Oath).

52.  The summonses were similarly issued following PAWN RITE's refusal to cede to the NYPD's warrantless demands.

53.  That on October 30, 2018, the Court dismissed the referenced summonses on the merits (#199900517/526 Kings).

54.  In the end, with virtually all the referenced criminal proceedings - the arresting police officers did not appear at the respective trial appearance dates.

55.  It is accordingly argued that the absenteeism was part of a deliberate and contrived scheme to maliciously injure and disrupt the business of PAWN RITE  as well as their employee  - RODRIGUEZ.

56.  It is further alleged that on many other occasions, the NYPD intruded upon other various branches of PAWN RITE and similarly sought to search their books and records and collateral/asset inventory (including jewelry) - without any warrants.

57.  PAWN RITE would always object to such warrantless searches - despite the NYPD claiming they simply were performing an "administrative inspection" - and had the right to do so.

58.  Significantly, the NYPD officers (including NYPD OFFICER JONES and NYPD

OFFICER JENKINS) never sought their limited right to review any books or records under a qualified administrative inspection scheme.  Rather, they pursued isolated criminal investigations without just cause and without any voluntary consent.

59.  That the NYPD officers demanded full compliance with their intrusive demands and threatened that they would return and take whatever further action they chose without care of a disruption of the business.

60.  That PAWN RITE always offered their records for review, but the NYPD was always disinterested in conducting such a legitimate administrative inspection.

61.  That during the course of these intrusions, Plaintiffs advised the NYPD that their rights were being violated and claimed that their business practices were otherwise in full compliance with all applicable state and city regulations.

62.  That on many other occasions, between 2017 through end of 2018 - the NYPD consistently sought to bully Plaintiff in part by maintaining a presence at various PAWN RITE branches and investigating random transactions.

63.  That the NYPD "holds" which were placed on various collateral/assets - have disrupted PAWN RITE's ability to swiftly foreclose in the ordinary course of business - as said "holds" were ordered without just cause and without due process of law.

64.  That on several other occasions, the NYPD demanded to confiscate collateral jewelry - by either actually taking items or requiring "holds" be placed thereon  - despite having no warrant or legal right otherwise.

65.  That the rule of law, however, does not permit law enforcement to force pawnbrokers to open their business premises for interrogations, criminal inspections or to abide by "hold orders" - undertaken under the guise of an "administrative inspection".

66.  That the intrusions, detainments and seizures were illegal and unconstitutional violation(s) of the civil rights of Plaintiffs and were undertaken pursuant to a municipal policy resting upon a known unconstitutional statute (NYC Charter 436) - and as a consequence new that

their practices and procedures were unlawful.

67.  Furthermore, PAWN RITE  suffered violations of its civil rights by reason of such harassment, coupled with said warrantless search(s) of the  premises - and that these acts caused disruption of its business - a result which Defendants knew or should have known

68.  That these actions were taken in retaliation to PAWN RITE's reluctance to furnish private information concerning its customers and to produce collateral/assets of the business - upon demand by the NYPD.

69.  Accordingly, Plaintiffs suffered, amongst other things - a violation of *due process*, Fourth Amendment rights and *equal protection* - arising out of such illegal municipal policy and that these actions resulted in damages driven by commercial loss, emotional distress, malicious prosecution(s), interference with personalty and property and other various torts.

## AS AND FOR A FIRST CAUSE OF ACTION
### (violation of Fourth Amendment and Due Process)

70.  Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "69" inclusive, with the same force and effect as if more fully set forth at length herein and state that during the time period discussed, Defendants continuously threatened and exerted the force of law upon Plaintiff - wherever their branches were situated.

71.  That these visits were not justified administrative inspections and were not in furtherance of any regulatory scheme with a properly defined scope - but were simply illegal Fourth Amendment intrusions lacking due process.

72.  That during many of these intrusions, Defendants attempted to coerce PAWN RITE  into complying with a subverted municipal policy.

73. That Defendants, in concert with their unlawful policies, ordered that PAWN RITE place

on "police holds" various collateral/merchandise lawfully in their possession and open their records and premises for searches.

74.   That such demands effectively served as illegal searches and seizures under the Fourth Amendment - as they were made without warrants or other suitable judicial process.

75.   That PAWN RITE was forced to open their premises for searches and to set aside jewelry and other valuable assets and collateral (per "hold orders") for indefinite periods of time - when they could have otherwise swiftly resold, foreclosed, auctioned or liquidated same in its ordinary course of business.

76.   That Defendants illegal actions also included the aforementioned arrest of Plaintiff RODRIGUEZ and issuance of multiple criminal summonses over the course of year 2018 and that such summonses had no merit nor arguable probable cause.

77.   During many of these intrusions, the demands that PAWN RITE comply with their illegal municipal practice in exchange for them discontinuing their disruptive actions is per se unconstitutional - as law enforcement cannot  unduly exert the force of law.

78.   That during these intrusions, PAWN RITE objected and consistently advised that their rights were being violated and that their business was nonetheless in  compliance with all applicable state and city regulations.

79.   That the intrusions were not justified administrative inspections, but rather unlawful searches by law enforcement - having no arguable probable cause and having no intended effect other than to serve the NYPD's illegitimate policies.

80.   That in all said intrusions, there was never any constitutionally adequate substitute for warrants and there was nothing credible Defendants could claim that would justify that such visits in furtherance of any regulatory scheme.

81.  Accordingly,  the actions of the defendants acting under color of state law,

constitute a continuous deprivation of plaintiff's rights and are a violation of the Fourth

Amendment and to *due process* of the law pursuant to the U.S. Constitution - as well as violative

of related provisions within the New York State Constitution.

82.   That  the Defendants, by their actions, have accordingly violated the civil rights

of PAWN RITE and their employees - including RODRIGUEZ.

83.   That defendants conduct has caused financial harm to Plaintiffs and is

likely to continue to cause financial harm to the Plaintiffs.

84.   That Plaintiffs have, as a consequence, been deprived of their civil rights by the

Defendants acting under color of state law in violation of 42 USC § 1983.

85.   That Plaintiffs have accordingly been damaged in the minimal sum of $10,000,000.00

and punitive damages should issue in addition thereto.


## AS AND FOR A SECOND CAUSE OF ACTION
(claim withdrawn)




## AS AND FOR A THIRD CAUSE OF ACTION
(municipal liability)

97.  Plaintiffs repeats and reiterates each and every allegation contained in paragraphs

numbered "1" through "96" inclusive, with the same force and effect as if more fully set forth at

length herein and state that Plaintiff's constitutional rights have been violated by an illegal

and underhanded municipal policy.

98.   That by making demands that PAWN RITE submit to warrantless inspections in exchange for Defendants ending their illegal actions is by itself an unconstitutional municipal policy - as police may not unduly exert the force of law upon any citizen of the United States.

99.   That Defendants knew that the statute central to their inspection scheme (NYC Charter §436) was unconstitutional and that to conduct themselves as they did clearly violated Plaintiff's rights.

100.   That despite Defendants claim that the law permits "inspections", they never actually carried out legitimate administrative inspections nor were their searches made within any defined scope.

101.   That all actions such undertaken by the NYPD were without any systematic process and legitimate regulatory scheme - nor with any properly defined scope.

102.   To the contrary, Defendants profiled customers of PAWN RITE and pursued leads of crimes - all while operating under the cover of a constitutionally challenged statutory framework.

103.   That Defendants illegitimate policy targets pawnbrokers like PAWN RITE who choose not to "consent" to the NYPD's deliberate and illegal enforcement actions.

104.   Accordingly, NYC and the NYPD  have maintained and have carried out policies, customs and practices which are unconstitutional.

105.   Plaintiffs have, as a consequence, been deprived of their civil rights by the Defendants acting under color of state law in violation of 42 USC § 1983.

106.   Plaintiffs have accordingly been damaged in the minimal sum of $10,000,000.00 and punitive damages should issue in addition thereto.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (violation of civil rights to Plaintiff RODRIGUEZ)

107.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "106" inclusive, with the same force and effect as if more fully set forth at length herein and states that the Defendant NYPD Officers so named herein were duly appointed officers of the NYPD.

108.  At all times mentioned, said officers were acting under color of law, to wit: enforcing statutes, ordinances, regulations, policies and customs of the State of New York and City of New York.

109.  Plaintiff is at all relevant times herein, a citizen of the United States and a resident of County of Kings, State of New York - and brings this action pursuant to 42 USC §1983 and 42 USC §1988.

110.  On April 3, 2018, Defendants - utilizing armed police officers while undertaking an illicit municipal agenda - did search, seize, assault and unlawfully imprison RODRIGUEZ - without any probable cause.

111.  Defendants physically seized RODRIGUEZ during the arrest process(s) in an unlawful an excessive manner – without just cause.  As a consequence, RODRIGUEZ was falsely arrested, unlawfully imprisoned and maliciously prosecuted without Defendants possessing probable cause to do so.

112.  That on the subsequent dates so referenced wherein Defendants issued other additional summonses upon RODRIGUEZ, their actions were uniformly deemed to be unlawful, frivolous and without just cause - and simply meant to harass and be malicious in nature.

113.  The actions of the Defendants resulted in RODRIGUEZ being deprived of the following rights under the US Constitution:

    a.  Freedom from assault;
    b.  Freedom from battery;
    c.  Freedom from illegal search and seizure;
    d.  Freedom from false arrest;
    e.  Freedom from malicious prosecution;
    f.   Freedom from use of excessive force;
    g.  Freedom from unlawful imprisonment.

114.  Defendants subjected Plaintiff to such deprivations of liberty, and did so in a malicious and/or reckless disregard of Plaintiff's rights and/or with deliberate indifference to those rights conferred by the Fourth and Fourteenth Amendments to the U.S.  Constitution - as well as the New York State Constitution.

115.  The direct and proximate result of Defendants actions resulted in RODRIGUEZ suffering severe and permanent injuries of a physical and psychological nature.  RODRIGUEZwas notably forced to endure physical and emotional distress, humiliation and anxiety - all to her detriment.

116.  In accordance with 42 USC Section 1988, RODRIGUEZ has been damaged in the minimum sum of $5,000,000.00 and punitive damages and an award of attorneys fees should issue thereon.

## AS AND FOR A FIFTH CAUSE OF ACTION
(unlawful arrest)

117.  Plaintiff RODRIGUEZ repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "116" inclusive, with the same force and effect as if more fully set forth at length herein and states that during the course of  the ensuing confrontation and police action, RODRIGUEZ was arrested without any justification or probable cause.

118. That it was the intention of the arrest was to confine RODRIGUEZ; that RODRIGUEZ was conscious of the confinement and that he did not consent to the confinement as the confinement was not privileged.

119.   That RODRIGUEZ suffered from unlawful physical touch, embarrassment, ridicule, emotional distress and damage to her reputation - arising out of said illegal confinement and false imprisonment.

120.   Acting under color of law and with motive and intent to exert duress, intimidate and cause fear, said Defendants deprived Plaintiff of her rights by virtue of such arrest and the injuries resulting were the direct and proximate result of Defendants actions.

121.  That the incarceration was egregious, unnecessary and retaliatory and deliberately staged to willfully strike harm with the Plaintiff.

122.  Such actions were reckless and demonstrated a callous indifference to the legally protected rights of others.

123.  Accordingly, compensatory damages should issue in the minimal sum of $5,000,000.00 together with punitive damages as may be just and equitable.

## AS AND FOR A SIXTH CAUSE OF ACTION
(assault/battery)

124.   Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "123" inclusive, with the same force and effect as if more fully set forth at length herein and states that Defendants (i.e. TAVERAS) during the course of making the subject arrest - unlawfully engaged in bodily contact with RODRIGUEZ.

125.   That it was the intention of Defendants to not just to confine Plaintiff under arrest but to place her in apprehension and fear of injury by Defendants unlawful physical actions and

contact.

126.  That the NYPD officers did strike fear into RODRIGUEZ by their actions and that such results constituted an assault and battery on RODRIGUEZ.

127.  At no time did the Plaintiff consent to the actions by the Defendants.

128.  Such actions demonstrated a callous indifference to the legally protected rights of others.

129.  Accordingly, compensatory damages should issue in the minimal sum of $5,000,000.00 together with punitive damages as may be just and equitable.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(malicious prosecution)

130.  Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "129" inclusive, with the same force and effect as if more fully set forth at length herein and states that Defendants played an active role in commencing and staging the underlying prosecution(s) against RODRIGUEZ, in part, by issuing such misdemeanors and administrative code summonses - despite having no merit whatsoever.

131.  That with complete disregard to the law and evidence before them, the NYPD Officers so mentioned issued said criminal summonses and, in part, undertook the arrest and incarceration of RODRIGUEZ.

132.  That the April 3, 2018 arrest in turn mandated RODRIGUEZ's appearance before the criminal courts of New York - having assigned arrest number K18620701 (Ct. index: 021097 KN 2018). That RODRIGUEZ  was compelled to surrender and appear before the criminal court on May 11, 2018 and appeared at said court on at least five additional occasions - until trial was scheduled on October 16, 2018.

133.  During that time span, the subject NYPD officers encouraged prosecution by providing sworn statements to the District Atty. - yet they never intended on appearing at the scheduled trial to testify in support of the People's case.

134.  That these NYPD officers, however, knew that their accusatory sworn claims were false and perjurous.

135.  That on the scheduled trial date (October 16, 2018), it was clear that the involved NYPD officers (NATALE and TAVERAS) had  never intended on appearing and upon default - the court dismissed all charges.

136.  That on every subsequent summons issued (particularly by NYPD OFFICER JONES and NYPD OFFICER JENKINS  and related criminal proceeding thereto, these Defendants continue to promote prosecution having abandoned any opportunity to effectuate dismissal(s) of the underlying charges.

137.  That after numerous court appearances between May, 2018 and October, 2018 - virtually every case was scheduled for trial and then in turn, dismissed.

138.  That on said trial date(s), the courts dismissed the various misdemeanor criminal complaints on the merits.

139. That as a consequence, the prosecutions were clearly commenced with actual malice and without probable cause to believe that they could truly succeed.

140.  That these NYPD officers, by their actions - sought to harass, intimidate and confine RODRIGUEZ arising out of a deliberate and malicious police policy having no soundness to law enforcement.

141.  That the prosecution did not, in fact, succeed and said prosecution ended in

dismissal of all charges.

142.  That the primary purpose of the arrest was other than that of bringing Plaintiff to

justice and that by such frivolous prosecution, damage was caused to her reputation and to her person

143.  That all said criminal defense undertakings, their intervention and the hiring of

legal defense counsel - was unjustifiably forced upon RODRIGUEZ  and done so under a contrived

scheme by the NYPD which was designed to harass, intimidate and punish Plaintiff in

part for her refusal to cede to their demands.

144. Such actions were reckless and demonstrated a callous indifference to state and

federally protected rights of others.

145.  That the issued misdemeanors and subsequent prosecution was vexatious in

accordance with New York State Civil Rights Law.

146.  Accordingly, compensatory damages should issue in the minimal sum of $5,000,000.00

together with punitive damages as may be just and equitable

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(attorneys fees)

147. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs

numbered "1" through "146" inclusive, with the same force and effect as if more fully set forth at

length herein and states that  42 U.S.C. §1983 is a specified civil rights statute of the United

States.

148.   The Civil Rights Attorney's Fees Awards Act of 1976 provides that prevailing

parties in actions brought pursuant to civil rights statutes shall be entitled to a full award of

attorneys fees as part of the costs of litigation.

149. That the Plaintiffs have already expended divers sums for legal expense

in being compelled to defend said frivolous criminal actions as well as for the anticipated costs

associated  with bringing the within federal action.

150.  Accordingly, Plaintiffs will be subjected to expense for legal representation as a consequence of Defendants actions and violations hereto and, as such, just remuneration is demand.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

1.  Per First Cause of Action; a finding that Plaintiff PAWN RITE and BELKIS RODRIGUEZ  have been deprived of their civil rights by the Defendants in violation of 42 USC § 1983 (4th Amendment/Due Process) and as such awarding compensatory damages in  the minimal sum of $10,000,000.00 and punitive damages thereon.

2. Second Cause of Action (withdrawn)

3.  Per Third Cause of Action; a finding that Plaintiff PAWN RITE has been deprived of their civil rights by the Defendants in violation of 42 USC §1983 (illegal municipal policy) and as such awarding compensatory damages in  the minimal sum of $10,000,000.00 and punitive damages thereon.

4.  Per Fourth Cause of Action; a finding that Plaintiff BELKIS RODRIGUEZ  has been deprived of her civil rights by the Defendants in violation of 42 USC §1983 (Fourth Amendment/unlawful arrest) and as such awarding compensatory damages in  the minimal sum of $5,000,000.00 and punitive damages thereon.

5.  Per Fifth Cause of Action; a finding that Plaintiff BELKIS RODRIGUEZ  has been deprived her civil rights by unlawful arrest (N.Y.S.) and as such awarding compensatory damages in  the minimal sum of $5,000,000.00 and punitive damages thereon.

6.  Per Sixth Cause of Action; a finding that Plaintiff BELKIS RODRIGUEZ  has been deprived her civil rights by assault/battery (N.Y.S.) and as such awarding compensatory damages in  the minimal sum of $5,000,000.00 and punitive damages thereon.

7.  Per Seventh Cause of Action; a finding that Plaintiff BELKIS RODRIGUEZ  has been

deprived her civil rights by malicious prosecution(s) (N.Y.S.) and as such awarding compensatory damages in  the minimal sum of $5,000,000.00 and punitive damages thereon.

8.   Per Eighth Cause of Action, a finding that Plaintiff PAWN RITE and BELKIS RODRIGUEZ  have been deprived of their civil rights and are accordingly entitled to an award directing payment of all reasonable attorneys fees per Civil Rights Attorney's Fees Awards Act of 1976.

JURY DEMAND:
Plaintiff demands a trial by jury.

Dated:  New York, New York
         April 29, 2022

*Paul J. Solda*

**PAUL J. SOLDA, ESQ**.
(Attorney for Plaintiffs )
One Grand Central Place
60 East 42nd Street, 46th Floor
New York, New York 10165
212.967.3393
ps@soldalaw.com

Copies to:

Richard Bahrenburg, Esq., Senior Counsel

City of New York Corporation Counsel
James Johnson, Esq.
100 Church Street
New York, N.Y. 10007
(212) 356-2557